UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRANSITIONAL HEALTH SERVICES
OF FREMONT,

      Plaintiff,

v.

SERVICE EMPLOYEES INTERNATIONAL
UNION, HEALTHCARE MICHIGAN,

      Defendant.
_____/

File No. 1:18-CV-450

HON. JANET T. NEFF

## OPINION

This is an action to vacate an arbitration award. Plaintiff Transitional Health Services of Fremont ("Fremont") employed Kenneth Span as a Certified Nurse Aid (CNA) at its facility in Fremont, Michigan, for over 14 years. Fremont terminated Span in December 2016 following an investigation into possible employee misconduct at the facility. Span filed a grievance about his termination in accordance with the grievance procedure in a collective bargaining agreement (CBA) between Fremont and Defendant Service Employees International Union, Healthcare Michigan ("SEIU"). SEIU represented, and continues to represent, Span in connection with that grievance. The CBA calls for arbitration of grievances that are not resolved through the initial grievance process. The parties submitted the grievance to an arbitrator, who found in favor of Span.

Fremont now seeks to undo the arbitrator's decision. In a counterclaim, SEIU seeks enforcement of the arbitration award. Before the Court is Fremont's motion to vacate the arbitration award (ECF No. 8) and SEIU's motion for summary judgment (ECF No. 28). For the

reasons herein, the Court finds in favor of SEIU. Its motion for summary judgment will be granted and Fremont's motion to vacate the arbitration award will be denied.

## I. Background

Span worked the night shift on December 4-5, 2016, at Fremont's long-term care and rehabilitation facility in Fremont, Michigan. As his shift ended, several nurses reporting to work noticed that a number of residents were lying in urine-soaked bedsheets. They reported these conditions to Fremont. Fremont suspended Span from work a few days later, pending an investigation. Fremont terminated Span on December 12, 2016.

Span filed a grievance, claiming that Fremont suspended and terminated him without just cause, in violation of the CBA. In cases involving "resident/patient neglect or abuse," "just cause" means that the employer "has a reasonable belief that the employee engaged in the acts or omissions that led to the discipline related to resident/patient care." (CBA ¶ 12.10, ECF No. 32-2, PageID.639.)

Span also claimed that Fremont committed an "unfair labor practice" under the National Labor Relations Act, 29 U.S.C. § 158(a), because it terminated him due to his involvement in union activities.

The CBA provides a grievance procedure to resolve disputes about "disciplinary actions taken by the Employer," "contract interpretations," and "conditions of employment." (CBA ¶ 12.1.) If the grievance is not resolved through the preliminary steps of the process, the parties can submit the grievance to an arbitrator. (*Id.* ¶ 12.3.) The arbitrator's decision is "final and binding on all parties," and the arbitrator's award is "enforceable as the agreement of the parties[.]" (*Id.* ¶ 12.5.)

Fremont and SEIU submitted Span's grievance to an arbitrator, who conducted a hearing over three days, on June 15, August 31, and September 27, 2017. Following the hearing,

2

the arbitrator issued a 21-page opinion deciding the issues in Span's favor. The arbitrator determined that Fremont terminated Span without just cause because it did not have a reasonable belief that he had neglected or abused residents. (Arbitration Op. & Award, ECF No. 32-1, PageID.620.) The arbitrator also determined that Fremont had engaged in an unfair labor practice because Span's union activities were a motivating factor in his termination. (*Id.*, PageID.624.) The arbitrator decided that the appropriate remedy is to reinstate Span and "make him whole." (*Id.*)

Fremont filed this action in state court to vacate the arbitration award. SEIU removed the action to this Court, invoking Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and filed a counterclaim for enforcement of the arbitration award.

## II. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

The function of the Court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "A dispute is genuine if there is evidence 'upon which a reasonable jury could return a verdict in favor of the non-moving party.' A factual dispute is material only if it could affect the outcome of the suit under the governing law." *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 418

(6th Cir. 2015) (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

### III. Standard for Review of Labor Arbitration Awards

The Court of Appeals recently summarized the federal courts' standard for review of labor arbitration decisions as follows:

> Federal courts review arbitration decisions with a deferential gaze. We ensure that the arbitrator (1) did not commit fraud or other dishonesty, (2) resolved a dispute fairly committed to arbitration, and (3) at least arguably construed the collective bargaining agreement. *Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc). Just as important is what we do not do. We do not ask whether the arbitrator interpreted the contract correctly. We thus may not overturn an arbitration decision on the ground that the arbitrator made mistakes, whether "serious" errors, *id.* at 756, or "improvident, even silly," mistakes, *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38-39 (1987). . . .

*Econ. Linen & Towel Serv., Inc. v. Int'l Bhd. of Teamsters, Teamsters Local Union 637*, 917 F.3d 512, 513 (6th Cir. 2019). This is "'one of the narrowest standards of judicial review in all of American jurisprudence.'" *DBM Techs., Inc. v. Local 227, United Food & Commercial Workers Int'l Union*, 257 F.3d 651, 656 (6th Cir. 2001) (quoting *Lattimer-Stevens Co. v. United Steelworkers of Am., AFL-CIO, Dist. 27, Sub-Dist. 5*, 913 F.2d 166, 1169 (6th Cir. 1990)).

### III. Analysis

#### A. Fremont's Motion to Vacate

In its motion to vacate the arbitration award, Fremont raises two objections to the arbitrator's decision. First, it argues that the arbitrator refused to postpone the hearing to consider relevant evidence, in violation of Mich. Comp. Laws § 691.1703(1)(c). On the last day of the

4

arbitration hearing, Fremont asked to continue the matter so that it could present rebuttal evidence but the arbitrator denied Fremont's request. Second, Fremont contends that the arbitrator refused to adhere to the "plain meaning" of the CBA, in violation of Mich. Comp. Laws § 691.1703(1)(d). (Mot. to Vacate, ECF No. 8-2, PageID.204.) In particular, Fremont argues that the arbitrator misinterpreted the "just cause" requirement in the CBA.

Fremont's reliance on state law is misplaced. The Court of Appeals for the Sixth Circuit has "repeatedly held that claims involving rights created by a CBA are governed by the LMRA." *Aloisi v. Lockheed Martin Energy Sys., Inc.*, 321 F.3d 551, 556 (6th Cir. 2003) (citing cases). "Section 301 preempts state law when the application of state law requires the interpretation of a collective bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *see also Kallen v. District 1199, Nat'l Union of Hosp. & Health Care Emps., RWDSU, AFL-CIO*, 574 F.2d 723, 725 (2d Cir. 1978) ("Since federal courts indisputably have jurisdiction under section 301 to enforce a labor arbitration award, . . . we agree with the district court that suits to vacate awards are cognizable under the same statute.").

Fremont's state-law claims are preempted because they challenge an arbitration conducted pursuant to a CBA. Fremont's rights with respect to that arbitration derive from the CBA. Moreover, both of Fremont's claims require interpretation of the CBA. Fremont's claim that the arbitrator refused to postpone the hearing "upon [a] showing of sufficient cause for postponement," in order to "consider evidence material to the controversy," *see* Mich. Comp. Laws § 691.1703(1)(c), requires the Court to examine the terms of the CBA to determine what evidence would be material.[1] Similarly, Fremont's claim that the arbitrator did not apply the "plain

---

[1] In any event, this claim is wholly conclusory because Fremont does not indicate what evidence it would have presented that would have been material to the arbitrator's decision. Nor does it indicate why a continuance was necessary to present that evidence. Thus, even under state law, Fremont has not established entitlement to relief.

5

meaning" of the CBA clearly involves interpretation of the CBA. Accordingly, federal law applies, not state law.

The fact that the CBA provides that an arbitration award is enforceable "[i]n any circuit court having jurisdiction thereof, as an award rendered in a proceeding under Michigan Compiled Laws, s423.9d, and amendments thereto, or in any federal court having jurisdiction thereof," does not change this result. (CBA ¶ 12.5, PageID.638.) This provision allows the arbitration award to be *enforced* in a state or federal court with appropriate jurisdiction. It does not provide the applicable standard for reviewing and vacating the award.

Under federal law, "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (citation omitted). In other words, when reviewing the merits of the arbitrator's decision, the Court must ask the following questions:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

*Mich. Family Res.*, 475 F.3d at 753. "So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute." *Id.*

Fremont does not argue that the arbitrator resolved a dispute not committed to arbitration, committed fraud, had a conflict of interest, or acted dishonestly in issuing the award. Rather, Fremont disagrees with the arbitrator's interpretation of "just cause" in the CBA. The arbitrator determined that just cause requires a "reasonable belief that [the employee] had engaged in neglect or abuse" (Arbitration Op. & Award, PageID.618), whereas Fremont contends that just

6

cause requires only that it had a reasonable belief that "the employee engaged in any acts or omissions that led to the discipline related to resident/patient care." (Pl.'s Mot. to Vacate, PageID.206.)

Fremont's disagreement with the arbitrator's interpretation of the CBA is not sufficient to vacate the arbitration award. The arbitrator considered Fremont's argument and rejected it. She determined that Fremont's argument "basically overlooked" the language in the CBA tying "just cause" to "cases related to resident/patient neglect or abuse." (Arbitration Op. & Award, PageID.611 (citing CBA ¶ 12.10).) In other words, she reasonably determined that the "acts or omissions" referenced in section 12.10 of the CBA referred to conduct involving patient abuse or neglect. When making that determination, the arbitrator was "arguably construing" the CBA. *See Mich. Family Res.*, 475 F.3d at 753.

Fremont also contends that the arbitrator exceeded her authority by ignoring the "plain meaning" of the CBA and substituting her own judgment for what the contract provides. (Pl.'s Mot. to Vacate, PageID.204.) However, Fremont expressly gave the arbitrator authority to resolve disputes about interpretation of the CBA, and she was clearly exercising that authority when she made her decision. Even if that interpretation was wrong, "[a]n arbitrator does not exceed [her] authority every time [she] makes an interpretive error; [she] exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration. Otherwise, every error would be grounds for judicial intervention[.]" *Mich. Family Res.*, 475 F.3d at 756. Thus, even if the arbitrator made a "serious" error of interpretation, her construction of the CBA is what the parties bargained for, and the Court must respect that "delegation of decision-making authority." *Id.* Accordingly, the Court rejects Fremont's challenge to the merits of the arbitrator's decision.

7

To the extent Fremont challenges the arbitration process, including Fremont's inability to present rebuttal evidence, that challenge is also meritless. "Arbitrators generally 'are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing.'" *Willacy v. Marotta*, 683 F. App'x 468, 473 (6th Cir. 2017) (quoting *Nat'l Post Office Mailhandlers, Watchmen, Messengers & Grp. Leaders Div., Laborers Int'l Union of N. Am., AFL-CIO v. U.S. Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985)). "'Fundamental fairness requires only notice, an opportunity to present relevant and material evidence and arguments to the arbitrators, and an absence of bias on the part of the arbitrators.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002) (quoting *Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co.*, No. 99–3322, 2000 WL 178554, at *6 (6th Cir. Feb. 8, 2000)). Fremont does not contend that it lacked notice and an opportunity to present its evidence and arguments to the arbitrator. Indeed, the arbitrator's opinion indicates that Fremont presented a great deal of evidence in support of its case. Thus, it has not shown that the arbitration hearing was fundamentally unfair.

Moreover, nothing in the CBA required the arbitrator to give Fremont an opportunity to present rebuttal evidence after presenting its case in chief. As the Supreme Court noted in *Misco*, "[t]he parties bargained for arbitration to settle disputes and were free to set the procedural rules for arbitrators to follow if they chose." *Misco*, 484 U.S. at 40. Likewise, Fremont could have agreed to rules requiring the arbitrator to permit rebuttal evidence, but it did not do so. Where, as here, "the subject matter of a dispute is arbitrable, 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator." *Id.* Accordingly,

Fremont's challenges to the arbitrator's award are groundless and its motion to vacate will be denied.

### B. SEIU's Motion for Summary Judgment

SEIU asks the Court to grant it summary judgment on its counterclaim for enforcement of the arbitration award. As indicated in the previous section, the parties submitted their dispute to arbitration and the arbitrator found in favor of Span. Fremont has not presented a valid reason for the Court to vacate that award.

Fremont resists SEIU's motion on the basis that the award is contrary to public policy. Fremont contends that reinstating Span would violate state law. At the time of the award, Michigan law provided that a nursing home facility could not employ an individual who "[e]ngages in conduct that becomes the subject of a substantiated finding of neglect, abuse, or misappropriation of property by a state or federal agency pursuant to an investigation conducted in accordance with 42 USC 1395i-3 or 1396r." Mich. Comp. Laws § 333.20173a(1)(i) (2014). In 2018, the law was amended to replace the words "pursuant to" with "under." Fremont contends that Span is ineligible for employment because he engaged in conduct that became the subject of a substantiated finding of abuse or neglect by Michigan's Bureau of Community and Health Systems (BCHS).

"[A] court may not enforce a collective bargaining agreement that is contrary to public policy." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). "[A]ny such policy must be 'explicit,' 'well defined,' and 'dominant.'" *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (quoting *W.R. Grace*, 461 U.S. at 766). "It must be 'ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests."'" *Id.* (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)).

9

An arbitration award arising from a collective bargaining agreement is treated as part of the agreement. *Id.* Accordingly, the same standards apply to the award. That is, the award is not enforceable if it "run[s] contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law[.]" *Id.* In this case, that means if the arbitration award's requirement to reinstate Span violates state law, then the award is not enforceable because it runs contrary to public policy.

Fremont's claim that reinstating Span would violate Michigan law is unfounded. As evidence for its assertion that Span engaged in conduct that became the subject of a "substantiated finding" of abuse or neglect, it refers to a report prepared by BCHS after Fremont terminated Span. (*See* BCHS Summary Statement of Deficiencies, ECF No. 32-3.)

According to Fremont, it reported an allegation of neglect to BCHS on December 8, 2016. A few days later, it submitted a "Facility Investigation Summary" to BCHS that "confirmed its findings that Span engaged in neglect." (Pl.'s Resp. to Mot. for Summ. J., ECF No. 29, PageID.576.) BCHS conducted its own investigation by interviewing employees and reviewing Fremont's records, and completed its report on February 8, 2017.

According to the BCHS report, BCHS concluded that Fremont failed to comply with federal regulations in two main respects. First, under the heading "INVESTIGATE/REPORT ALLEGATIONS/INDIVIDUALS," the report states that Fremont

> failed to ensure that an allegation of neglect was immediately reported and thoroughly investigated . . . and allowed an employee alleged to have neglected residents to continue working with residents, resulting in the potential for ongoing abuse and neglect, allegations of abuse and neglect to go unrecognized, unreported and not thoroughly investigated.

(BCHS Summary Statement of Deficiencies, PageID.678.) In other words, Fremont did not immediately report the allegation of neglect to the state, and did not adequately investigate that allegation. In addition, Fremont allowed Span, against whom the allegation was made, to continue

working for several days after the allegation was reported, rather than suspending him immediately. These actions violated 42 C.F.R. §§ 483.12(a)(3)-(4), (c)(1)-(4). (*See* BCHS Summary Statement, PageID.676.)

Second, under the heading "DEVELOP/IMPL[E]MENT ABUSE/NEGLECT, ETC POLICIES," the report states that Fremont

> failed to follow its policy and procedure for abuse prohibition and ensure that an allegation of neglect was immediately reported and thoroughly investigated . . . and allowed an employee alleged to have neglected residents to continue working with residents, resulting in the potential for ongoing abuse and neglect, allegations of abuse and neglect to go unrecognized, unreported and not thoroughly investigated.

(*Id.*, PageID.693-694.) In other words, Fremont had policies in place for prohibiting abuse and neglect, reporting allegations of such conduct, investigating them, and suspending individuals suspected of neglect or abuse, but Fremont did not follow those policies. Its failures violated 42 C.F.R. §§ 483.12(b)(1)-(3), 483.95(c)(1)-(3). (*See* BCHS Summary Statement, PageID.692.)

Notably, the report does not contain an express finding of abuse or neglect, let alone that Span engaged in that conduct. On the contrary, the report states in multiple places that Fremont's records "did not reflect findings having anything to do with neglect" or "did not reflect any indication [a particular] Resident . . . had been neglected." (*Id.*, PageID.681-683, 685.) In addition, a number of the residents "denied any neglect or abuse or having had a notably hard time getting assistance overnight 12/4/2016 – 12/5/2016." (*Id.*, PageID.685.)

The closest the report comes to an actual finding of abuse or neglect is in the following statement:

> [Director of Nursing (DON)] "B" said that it wasn't until that morning meeting on 12/6/16 that she was instructed by NHA "A" to obtain staff statements. DON "B" reported that she was never instructed to obtain statements from the nurse who supervised CNA [Span] overnight 12/4/2016 – 12/5/2016 and had no evidence that nurse wasn't as responsible for the neglect alleged (later substantiated by the facility) to have occurred.

11

(*Id.*, PageID.688.) But this statement merely indicates that *Fremont* substantiated the neglect, not BCHS. Michigan law requires a substantiated finding by a "state or federal agency." *See* Mich. Comp. Laws § 333.20173a(1)(i). Fremont is not a state or federal agency.

Moreover, the BCHS report discounts Fremont's investigation by noting that Fremont did not interview the employees who were on staff when the alleged neglect occurred. (*See* BCHS Summary Statement, PageID.692.) Similarly, the arbitrator determined that Fremont "did not even interview the nurse who was on duty that night, or the laundry aide who worked that night, or Mr. Span." (Arbitration Op. & Award, PageID.618.) This is consistent with BCHS's conclusion that Fremont did not thoroughly investigate the allegation of neglect.

The BCHS report also repeats several statements prepared by "DON 'B'" a day or two after the alleged incident, in which she asserted that several beds were "soaked" on the morning of December 5, and that Span "was in a hurry to leave" that morning. (BCHS Summary Statement, PageID.688.) DON "B" (whose actual name is Jamie Baker) is the same person who, according to the arbitrator, called Span a "troublemaker" and improperly singled him out for discipline due to his involvement in union activities. (Arbitration Op. & Award, PageID.621-622.) The BCHS report implicitly questions Baker's claims, noting that "she did not believe she had an allegation of neglect until 12/8/16, three days after the alleged incident [on] 12/5/16 and despite being directed to obtain statements about the alleged neglect the next day on 12/6/16." (BCHS Summary Statement, PageID.688.) In any event, whether Baker's statements were correct or not, BCHS's summary of those statements is not equivalent to an affirmative and substantiated finding of abuse or neglect.

Fremont argues that BCHS's conclusion that Fremont did not follow its policies for the prevention of abuse and neglect necessarily means that BCHS found that abuse or neglect

12

occurred. That is not so. There are at least three ways in which Fremont failed to follow its policies: (1) it did not "immediately" report an "allegation" of neglect; (2) it did not "thoroughly" investigate that allegation; and (3) it allowed an employee alleged to have been involved in that neglect to continue working after the allegation was made. (*See* BCHS Summary Statement, PageID.693-694.) None of those failures necessarily mean that abuse or neglect occurred.

According to BCHS, Fremont's failures resulted "in the potential for ongoing abuse and neglect" and for "allegations of abuse and neglect to go unrecognized, unreported and not thoroughly investigated." (*Id.*, PageID.694.) In other words, Fremont's failures put its residents at risk of "potential" harm from abuse and neglect by ignoring an allegation of such conduct when it first came to light. Abuse and neglect prevention policies attempt to avert or minimize the risk of abuse and neglect by requiring staff to promptly report and investigate all allegations of such conduct even when further investigation may reveal that no misconduct occurred. As the arbitrator's opinion demonstrates, not all allegations are substantiated. But that does not make a nursing facility any less responsible for failing to respond to such allegations in an appropriate manner. Implementing policies to report and investigate allegations of abuse and neglect is mandated by federal regulations, regardless of whether abuse or neglect has occurred. *See* 42 C.F.R. § 483.12(b). Thus, BCHS's finding that Fremont did not follow its policies for reporting and investigating an allegation of abuse or neglect does not necessarily entail a finding that the abuse or neglect occurred, let alone that Span engaged in conduct that was the subject of such a finding.

Furthermore, the absence of an express finding about Span indicates that BCHS did not complete its report as part of an "investigation conducted in accordance with 42 USC 1395i-3 or 1396r." Mich. Comp. Laws § 333.20173a(1)(i). Section 1395i-3 applies to "skilled nursing

13

facilities." 42 U.S.C. § 1395i-3(a). It provides that, when the state conducts an investigation of allegations of resident abuse or neglect by a nurse aide at a skilled nursing facility, the state must provide "the individual involved with a written notice of the allegations" and "the opportunity for a hearing on the record[.]" 42 U.S.C. § 1395i-3(g)(1)(C). After that, the state must "make a written finding as to the accuracy of the allegations." *Id.* If the state finds that the nurse aide neglected or abused a resident, the state must notify the nurse aide and the state registry. *Id.* The state must make its findings of abuse or neglect by a nurse aide publicly available in the state's nurse aide registry. 42 U.S.C. § 1395i-3(e)(2)(B). Section 1396r contains virtually identical provisions for nurse aides at "nursing facilities." *See* 42 U.S.C. §§ 1396r(e)(2)(B), (g)(1)(C). And in both statutes, there is a *separate* process for investigating compliance by the facility. *See* 42 U.S.C. §§ 1395i-3(g)(3)(D), 1396r(g)(3)(D).

Nothing in the BCHS report indicates that BCHS held a hearing on, or made a finding of, resident neglect by Span. The report itself is directed at Fremont, not Span. The report does not mention Span by name,[2] describe his conduct in any detail, or expressly attribute the allegedly neglected condition of the residents at the facility on December 4-5, 2016, to him. Accordingly, the report is not evidence that Span is ineligible for reinstatement under Mich. Comp. Laws § 333.20173a(1)(i). *Cf. SEIU Healthcare Mich. v. Outer Drive Partners, LLC*, No. 08-13757, 2009 WL 1803237, at *5 (E.D. Mich. June 19, 2009) (concluding that a state report investigating a nursing facility was not an investigation of the nurse aide "conducted in accordance with 42 U.S.C. § 1395i–3 or 1396r.").

Indeed, if Span was truly ineligible for hire due to a finding of neglect, there would be a simple way to prove it. That finding would show up in Michigan's public nurse aide registry,

---

[2] It refers to him as "CNA 'P.'" (*See* BCHS Summary Statement, PageID.685.)

as required by federal law. However, no such finding appears in Span's entry in the registry.[3] Surely, the State of Michigan does not expect its nursing facilities, or Span himself, to pore over a report that does not even mention Span's name to determine whether he is eligible for hire as a nurse aide.

In short, there is no genuine dispute that the arbitration award is valid and enforceable. Fremont's arguments to the contrary are unsupported.

**IV. Conclusion**

For the reasons herein, the Court finds as a matter of law that the arbitration award issued against Fremont and in favor of Span is valid and enforceable. Accordingly, Fremont's motion to vacate will be denied and SEIU's motion for summary judgment will be granted. The Court will enter judgment in favor of SEIU as to Fremont's claim and SEIU's counterclaim.

A judgment and order will enter consistent with this Opinion.


Dated:   November 14, 2019                         /s/ Janet T. Neff
                                                  Janet T. Neff
                                                  United States District Judge

---

[3] *See* State of Michigan Nurse Aide Registry, https://registry.prometric.com/publicMI? (search for Kenneth Span) (accessed Nov. 7, 2019); *see also* Nurse Aide Registry, Michigan Department of Licensing and Regulatory Affairs, https://www.michigan.gov/lara/0,4601,7-154-89334_63294_75200---,00.html (noting that Michigan "contracts with Prometric to . . . maintain[] the Michigan CNA Registry") (accessed Nov. 7, 2019).